**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CYRUSONE LLC,

       Plaintiff,

v.

THE CITY OF AURORA, ILLINOIS,
RICHARD C. IRVIN, ROBERT O'CONNOR,
SHERMAN L. JENKINS, KRISTINA
BOHMAN, JUANY GARZA, TED
MESIACOS, BILL DONNELL, CARL
FRANCO, MICHAEL SAVILLE,
SCHEKETA HART-BURNS, RICK
MERVINE, EDWARD BUGG, JUDD
LOFCHIE,

       Defendants.

Case No. _____

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
REQUEST FOR EXPEDITED REVIEW UNDER 47 U.S.C. § 332(c)(7)(B)(v)**

       Plaintiff CyrusOne LLC ("CyrusOne"), by and through its attorneys, alleges as follows:

**NATURE OF ACTION**

       1.     The Nation's wireless infrastructure has become a critical communications pathway, increasingly serving as a complete replacement for traditional wireline phones for all purposes. Additionally, wireless network access has become the preferred and primary method by which trading companies access all major trading exchanges around the world.

       2.     Time and again, both Congress and the Federal Communications Commission ("FCC") have emphasized the importance of building out a seamless nationwide wireless network. To that end, Congress established a statutory framework which constrains State and local zoning authority to the extent that zoning decisions may not "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications

service," 47 U.S.C. § 253(a). Moreover, zoning decisions that deny a request to provide personal wireless service facilities must "be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii).

3.        CyrusOne brings this action under the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Act"), in particular Sections 253 and 332 of Title 47 of the U.S. Code, as well as the Supremacy Clause of the United States Constitution and Illinois State law. CyrusOne was forced to bring this Complaint because, as described below, Defendants' grant of Scientel Solutions, LLC's ("Scientel") application to construct a communications tower on land adjacent to CyrusOne's data center works as a *post-hoc* denial of CyrusOne's special use permit for the tower on its property, in violation of the United States Constitution and Federal and State law.

## THE PARTIES

4.        Plaintiff CyrusOne, LLC is a Delaware limited liability corporation that provides data center colocation facilities. CyrusOne, LLC's sole member is CyrusOne LP, a Maryland limited partnership. The sole partner of CyrusOne LP is CyrusOne GP, a Maryland general partnership. The sole partner of CyrusOne GP is CyrusOne Inc., a Maryland corporation with its principal place of business in Dallas, Texas. Accordingly, CyrusOne, LLC is a citizen of Maryland and Texas. *See Cosgrove v. Bartolotta*, 150 F. 3d 729, 731 (7th Cir. 1998) ("[T]he citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members."); *see also Hart v. Terminex Intern.*, 336 F.3d 541, 543 (7th Cir. 2003) ("[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be" to determine the ultimate citizenship of the unincorporated association.).

2

5.      Defendant City of Aurora is located in Illinois and is a citizen of Illinois. *See Moor v. Alameda County*, 411 U.S. 693, 717 (1973) ("Political subdivisions are citizens of their respective states.").

6.      Defendant Richard C. Irvin is the mayor of Aurora, Illinois. Upon information and belief Irvin is domiciled in and is a citizen of Illinois.

7.      Defendant Robert O'Connor is an alderman of Aurora, Illinois. Upon information and belief O'Connor is domiciled in and is a citizen of Illinois.

8.      Defendant Sherman L. Jenkins is an alderman of Aurora, Illinois. Upon information and belief Jenkins is domiciled in and is a citizen of Illinois.

9.      Defendant Kristina Bohman is an alderman of Aurora, Illinois. Upon information and belief Bohman is domiciled in and is a citizen of Illinois.

10.     Defendant Juany Garza is an alderman of Aurora, Illinois. Upon information and belief Garza is domiciled in and is a citizen of Illinois.

11.     Defendant Ted Mesiacos is an alderman of Aurora, Illinois. Upon information and belief Mesiacos is domiciled in and is a citizen of Illinois.

12.     Defendant Bill Donnell is an alderman of Aurora, Illinois. Upon information and belief Donnell is domiciled in and is a citizen of Illinois.

13.     Defendant Carl Franco is an alderman of Aurora, Illinois. Upon information and belief Bohman is domiciled in and is a citizen of Illinois.

14.     Defendant Michael Saville is an alderman of Aurora, Illinois. Upon information and belief Saville is domiciled in and is a citizen of Illinois.

15.     Defendant Scheketa Hart-Burns is an alderman of Aurora, Illinois. Upon information and belief Hart-Burns is domiciled in and is a citizen of Illinois.

3

16.     Defendant Rick Mervine is an alderman of Aurora, Illinois. Upon information and belief Mervine is domiciled in and is a citizen of Illinois.

17.     Defendant Edward Bugg is an alderman of Aurora, Illinois. Upon information and belief Bugg is domiciled in and is a citizen of Illinois.

18.     Defendant Judd Lofchie is an alderman of Aurora, Illinois. Upon information and belief Lofchie is domiciled in and is a citizen of Illinois.

## JURISDICTION AND VENUE

19.     This Court has federal question jurisdiction over this action because it arises under the Act, in particular Section 332 of Title 47 of the U.S. Code, and the United States Constitution. *See* 28 U.S.C. § 1331. This Court also has jurisdiction over this action under Section 1337(a) of Title 28 of the U.S. Code because the Federal Communications Act and the Act are acts of Congress regulating commerce.

20.     This Court also has diversity jurisdiction over this action because there is complete diversity between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

21.     This Court has supplemental jurisdiction over the state-law claims brought in this action because those claims "form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367.

22.     This Court has jurisdiction to order declaratory and injunctive relief. *See* 28 U.S.C. §§ 2201, 2202; *see also Verizon Wireless (VAW), LLC v. Douglas County*, 2008 U.S. Dist. LEXIS 32990 (D. Kan. Apr. 21, 2008). There is a live and justiciable controversy between the parties.

23.     Venue is proper in this district because Defendants are located in this district and because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(b)(2); *see id.* § 1381(b)(1).

## BACKGROUND FACTS

24.     The CyrusOne Data Center located at 2905 and 2805 Diehl Rd., Aurora, Illinois ("the Data Center") hosts the trading infrastructure for the Chicago Mercantile Exchange ("CME"). Currently almost every major trading company in the world has a wireless network access connection to the Data Center and CME. CME's customers, particularly high-frequency traders, seek the quickest possible wireless access, which has led to tremendous frequency congestion in the area. With the goal of creating fair and competitive access to the CME, CyrusOne planned a 350-foot telecommunications tower that would serve every wireless network and telecommunications link requiring connection to the Data Center and CME.

25.     March 14, 2017, the City of Aurora (the "City") approved a variance for CyrusOne's tower on the above grounds, and granted CyrusOne a special use permit. The permit's terms require that CyrusOne's tower provide co-location access at fair market rates. The City also amended its telecommunications ordinance to require any entity proposing a new tower to demonstrate that it does not have the ability to utilize an existing tower. Thus, CyrusOne's tower was meant to be a co-location tower that would resolve the frequency congestion issues in the area and equalize wireless access to the CME.

26.     On June 7, 2017, Scientel submitted an application to the City for authorization to construct a 195-foot communications tower and develop the property at 245 E. Eola Road in Aurora, Illinois. This property is adjacent to and directly east of the property owned by CyrusOne, which houses the CME Data Center.

27.     The application included three (3) proposed actions: 1) a proposed revision to the development plan; 2) a proposed revision to Aurora's Comprehensive Plan; and 3) a proposed ordinance (the "Ordinance") granting a special use permit and separation variance for the construction of the proposed telecommunications tower. The separation variance was necessary because Scientel's proposed tower is approximately 1,200 feet from CyrusOne's property—far closer than the 2,500-foot setback required by the City's telecommunications ordinance. *See* Aurora, Ill. Ordinances § 19-68(p)(2), a true and correct copy is attached hereto as Exhibit A.

28.     On September 20, 2017, the Aurora Planning Commission considered and held a public hearing on Scientel's application. Due to the potential impacts on CyrusOne's 350-foot telecommunications tower, which is in the process of being constructed, CyrusOne representatives participated in that hearing by presenting testimony, but were denied the opportunity to cross-examine Scientel's witnesses. Moreover, the Aurora Planning Commission allowed no rebuttal comments after the testimony of Nelson Santos, President of Scientel Solutions, and denied CyrusOne's request for a 90-day extension.

29.     The Aurora Planning Commission recommended approval of the application, and it was subsequently considered and approved by the Planning and Development Committee of the Aurora City Council. The application was then considered by the City Council Committee of the Whole, and ultimately referred to the full City Council as unfinished business, to be heard at the full City Council Meeting.  Subsequently, the measure was tabled by the City Council for a period of two weeks.

30.     On November 14, 2017, the City Council voted against granting Scientel's request for a variance and special use permit by a vote of 7-3. The City Council heard testimony on behalf of CyrusOne, which focused on the purposes of the City's telecommunications

ordinance to prevent the proliferation of towers and require co-location. The City Council also heard testimony as to the interference the Scientel tower would cause with communications to the CyrusOne tower.

31. Despite its 7-3 decision against granting Scientel's application, at its very next meeting on November 28, 2017, the City Council voted to reconsider its decision. This reconsideration was purportedly based on the advice of the City Attorney, Richard Veenstra, who stated, "the City Council failed to take any action to approve a statement of facts or make findings of fact as to what basis, if any, the council had denied the request for a special use permit and for other requests," and that it was therefore necessary to reconsider the matter in order to make such findings of fact as required by statute and caselaw. The City Council did grant reconsideration; however, on the advice of the City Attorney, it did not address the substance of the decision at that time; instead, the City Council took no action until almost two months after the original decision.

32. On January 9, 2018, the City Council again considered Scientel's application. At this meeting, City staff gave an extensive and detailed overview of the history of Scientel's application and how the planning commission and staff had recommended approval. Scientel representatives were then allowed to give an approximately hour-long presentation on Scientel's business, complete with a PowerPoint presentation. This presentation included several pieces of new information which were not before the City at the time of its prior decision.

33. Scientel also provided, for the first time, specifics on its needs for tower space, including an immediate need to install twenty-eight satellite dishes, including twenty-four satellite dishes for public health and safety purposes, and four private dishes, with an additional eighteen following shortly thereafter. Scientel further provided new information asserting that

colocation would cost it $2.8 million annually, which would render the project not economically viable. All of this was new information which was not previously made part of the public record.

34.    At no point in the January 9, 2018 meeting were CyrusOne representatives or any other meeting attendees allowed the opportunity to cross-examine Scientel's witnesses or provide rebuttal testimony.

35.    Ultimately, the City Council granted Scientel's application, addressing each piece separately. Unlike the CyrusOne permit that required that CyrusOne's tower provide co-location access at fair market rates, no similar condition was placed on Scientel.  The votes ranged from a unanimous decision in favor of approving the amendment to the plan description for the construction and use of the building, to a 9-3 vote on the Special Use Permit for the tower, to a 7-5 vote on the findings of fact supporting the decision to grant the tower, and finally a 9-3 vote on the revision of the preliminary plan and plat related to the tower.

36.    Construction of the 195-foot communications tower proposed by Scientel on the property east of the CyrusOne tower will interfere with and physically block communication networks attempting to access the CyrusOne tower from the east, and has the potential to cause frequency congestion in the area. This interference with CyrusOne's wireless communications amounts to a *post-hoc* denial of CyrusOne's special use permit. The Scientel tower would also provide preferential access to the CME to a select few, undermining the CyrusOne tower's purpose of providing level access to the CME to all traders.

37.    Defendants' process in considering and approving Scientel's application was deficient in multiple respects, and was not supported by substantial evidence in the written record as required by 47 U.S.C. § 332(c)(7)(B)(iii). At the Aurora Planning Commission public hearing, CyrusOne representatives were denied the opportunity to cross-examine Scientel's

witnesses, and were denied a request for a 90-day extension. During the approval process, the materials submitted regarding Scientel's proposed special use permit were not available on the City of Aurora website prior to the public hearing. This unavailability significantly hampered CyrusOne's ability to assess the potential impact of the proposed tower on its facility.

38.     Moreover, the January 9, 2018 City Council meeting was rife with procedural irregularities. The City Council wrongfully reconsidered its decision far later than allowed for by state law. Moreover, the City Council heard over an hour of new testimony, including specifics regarding Scientel's technical needs, projected costs of co-location, the offering of a free wireless network to the community, and other never-before offered information, with no opportunity for cross-examination. While the City attorney instructed the City Council to consider only information in the record before the City at the time of its original decision, at least one alderman specifically noted that he had changed his mind on the basis of new information. That alderman moved to return the matter to the Planning Commission to properly consider the new information in a new hearing and allow cross-examination, but his motion failed.

39.     Scientel's proposed tower does not meet the setback requirements of the City's telecommunications ordinance, and Scientel failed to demonstrate the need for a variance from those requirements. The only tangible evidence of hardship Scientel would have faced had it been required to collocate on any of the six proposed or existing towers located within 1,860 feet, each of which provides elevations sufficient to meet Scientel's needs, was presented for the first time at the January 9, 2018 City Council meeting, during the reconsideration of the City Council's original decision denying Scientel's application. CyrusOne was not permitted to cross-examine Scientel's witnesses as to this evidence of hardship, nor to introduce testimony to the

contrary, leaving entirely uncertain the full extent of hardship Scientel would face were it required to co-locate.

40.     Defendants granted Scientel a special use permit before the FCC had the opportunity to conduct an interference analysis and inform any potentially affected license holders, leaving uncertain the full interference effects Scientel's tower will have.

41.     Approval of Scientel's tower is contrary to the purposes of the City's well considered telecommunications ordinance at Sec. 19-65 of the City Code, which is designed to, among other things, create a rational and competitive marketplace for telecommunications facilities; encourage co-location; enhance effective and efficient modes of communications; and minimize the visual impacts of telecommunications facilities. Approval of Scientel's tower will set the stage for several new telecommunications tower owners and operators to seek City approval, effectively undermining the legislative rationale for the City's telecommunications ordinance.

42.     Defendants' approval of the special use permit for the Scientel tower and the grant of the variance to reduce the required separation distance in light of the Scientel tower's likely interference with wireless communication on the CyrusOne tower works as a post-hoc denial of CyrusOne's special use permit for the tower on its property and was done without a written denial and in the absence of substantial evidence and, thus, violates the Telecommunications Act of 1996. Because the Ordinance granting the special use permit and variance violates 47 U.S.C. § 253(a), it is preempted, and its enactment violates the Supremacy Clause of the United States Constitution. Scientel's application fails to meet the standards set forth in the City's zoning and telecommunications ordinances, and the process employed by

Defendants in approving Scientel's application did not provide procedural due process, in violation of Illinois state law.

43.     If the Court grants CyrusOne an injunction, the benefit to CyrusOne will exceed $75,000. If the injunction is granted CyrusOne stands to gain $2.8 million or more annually from leases to Scientel alone.

**COUNT I**
**Federal Preemption of the City of Aurora's Ordinance Providing a Variance and Special Use Permit to Scientel**

44.     Section 253(a) of Title 47 of the U.S. Code provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

45.     The enactment of the Ordinance will allow Scientel to construct its telecommunications tower. That tower, once constructed, will significantly obstruct wireless communication access to the CyrusOne tower. Thus, the ordinance will have the effect of prohibiting CyrusOne from providing telecommunications service.

46.     The record discloses no evidence that the Ordinance was enacted to "preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, [or] safeguard the rights of consumers." *See* 47 U.S.C. § 253(b). By contrast, the Ordinance will hinder effective telecommunications services and promote the interests of some customers—those with access to Scientel's tower—over others.

47.     Neither does the Ordinance "manage the public rights-of-way or [] require fair and reasonable compensation from telecommunications providers, on a competitively neutral and

nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis." *See id.* at § 253(c).

48.     Therefore, because the Ordinance has the effect of prohibiting CyrusOne's ability to provide telecommunications services, and is not in service of the legitimate goals provided for in 47 U.S.C. § 253(b–c), the Ordinance, pursuant to the Supremacy Clause of the United States Constitution, is preempted by Section 253 of the Act.

49.     For the foregoing reasons, CyrusOne respectfully requests the entry of a declaratory judgment that the Ordinance is preempted by 47 U.S.C. § 253(a).

## COUNT II
## Unlawful Denial of the CyrusOne Special Use Permit Without Substantial Evidence in the Written Record
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii))

50.     CyrusOne repeats and incorporates by reference all preceding paragraphs.

51.     The Act provides:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall **be in writing** and supported by **substantial evidence** contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis supplied).

52.     Because the CyrusOne tower is a co-location tower, it will likely host "commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services," and is thus a "personal wireless service facility" as defined in the Act.

53.     Defendants voted to grant CyrusOne's application on March 14, 2017.

54.     By subsequently granting Scientel's application, Defendants have allowed for significant obstruction of wireless access to CyrusOne's tower, thus working a *post-hoc* denial of CyrusOne's permit to construct its personal wireless service facilities.

55.     Defendants have violated the Act because their grant of Scientel's application was not based on substantial evidence and is not supported by an adequate written decision.

56.     For the foregoing reasons, CyrusOne respectfully requests the entry of a declaratory judgment that Defendants' grant of the Scientel application violated 47 U.S.C. § 332(c)(7)(B)(iii).

**Expedited Review**

57.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the Act, CyrusOne respectfully requests expedited review of this Complaint.

58.     This action is timely pursuant to 47 U.S.C. § 332(c)(7)(B)(v) because it has been commenced within 30 days of the January 9, 2018 meeting of the City Council, at which the City Council voted to approve Scientel's application for a variance and special use permit. Accordingly, the January 9, 2018 meeting constitutes the "final action" adversely affecting CyrusOne within the meaning of 47 U.S.C. § 332(c)(7)(B)(v).

**COUNT III**
**Failure to Meet the Standards Set Forth in City of Aurora Zoning and Telecommunications Ordinances**
**(Violation of Aurora, Ill. Ordinances, §§ 19-71, 19-77, and Aurora, Ill. Zoning Ordinances § 10.6-5)**

59.     CyrusOne repeats and incorporates by reference all preceding paragraphs.

60.     Section 19-71(a)(2) of the City of Aurora, Illinois Code of Ordinances provides that applications for special use permits for communications facilities "shall be subject to the procedures and requirements of section 10-6 of the zoning ordinance, except as modified in this section." A true and correct copy of Sections 19-71 and 19-77 of the City of Aurora Code of Ordinances is attached hereto as Exhibit B.

61. Section 10.6-5 of the City of Aurora Zoning Ordinances requires that "[n]o special use shall be recommended by the planning commission unless it shall make findings based upon Section 11.5-6 Findings of Fact herein." A true and correct copy of Sections 10.6-5 and 11.5-6 of the City of Aurora Zoning Ordinances is attached hereto as Exhibit C.

62. Section 11.5-6 of the City of Aurora Zoning Ordinances requires that the planning commission

> recommend no amendment for approval unless it shall find that the proposed amendment:
>
> A. Is in accordance with all applicable official physical development policies and other related official plans and policies of the City of Aurora;
>
> B. Represents the logical establishment and/or consistent extension of the requested classification in consideration of the existing land uses, existing zoning classifications, and essential character of the general area of the property in question;
>
> C. Is consistent with desirable trend of development in the general area of the property in question, occurring since the property in question was placed in its present zoning classification, desirability being defined as the trend's consistency with applicable official physical development policies and other related official plans and policies of the City of Aurora;

*See* Exhibit C.

63. Defendants violated these requirements when the Planning Commission recommended approval of the Scientel tower, despite the fact that construction of the tower in that location would violate an existing setback ordinance and would needlessly proliferate communications towers in the immediate vicinity.

64. Section 19-77 of the Aurora Ill. Code of Ordinances requires that "Any decision rendered upon an application to locate, construct, or install a communications facility or for a

special use for any such facility shall be written and shall include findings of fact supported by substantial evidence in a written record." *See* Exhibit B.

65.    Defendants violated this requirement when the City Council approved Scientel's application in the absence of substantial evidence upon a written record.

66.    Illinois law provides that local decisions "in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance shall be subject to de novo judicial review as a legislative decision." 65 Ill. Comp. Stat. 5/11-13-25(a).

67.    This action is timely filed, as it was commenced within 90 days after the January 9, 2018 decision of the City Council to approve Scientel's application.

68.    CyrusOne respectfully requests the entry of a declaratory judgment that Defendants' grant of the Scientel application violated the standards set forth in the zoning and telecommunications ordinances of the City of Aurora.

**COUNT IV**
**Failure to Provide Due Process**
**(Violation of 65 Ill. Comp. Stat. 5/11-13-25(b))**

69.    CyrusOne repeats and incorporates by reference all preceding paragraphs.

70.    Illinois law provides that "[t]he principles of substantive and procedural due process apply at all stages of the decision-making and review of all zoning decisions." 65 Ill. Comp. Stat. 5/11-13-25(b).

71.    The Illinois Supreme Court has held that in the context of a special use petition, "due process require[s] that interested parties be afforded the right to cross-examine witnesses." *Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 167, 781 N.E. 2d 223, 225 (2002); *E & E Hauling, Inc. v. DuPage County*, 77 Ill. App. 3d 1017, 1021, 396 N.E.2d 1260, 1263 (1979). Moreover, "when a municipal body acts legislatively, [as when it alters a zoning regulation], its decision is

subject [] to review for arbitrariness as a matter of substantive due process." *Klaeren*, 202 Ill. 2d. at 187.

72.     Under Illinois law, a motion to reconsider is only in order as it pertains to the substance of a previous vote, enabling a legislative body an opportunity to change an earlier vote result, and does not serve as a basis to refine, illuminate, or otherwise clarify that earlier vote.

73.     Illinois law prohibits reconsideration of a municipal council's action where another party's rights have intervened. *Ceresa v. City of Peru*, 133 Ill. App. 2d 748, 754, 273 N.E.2d 407, 411 (Ill. App. Ct. 1971); *see City of Kankakee v. Small*, 317 Ill. 55, 63, 147 N.E. 404, 408 (Ill. Sup. Ct. 1925).

74.     Illinois law prohibits reconsideration of a municipal council's legislative action, including its zoning determinations, based upon new evidence that was not before the municipal council at the time it took the legislative action that is the subject of the reconsideration motion. *Ceresa*, 273 N.E.2d at 411; *see City of Kankakee*, 147 N.E. at 408.

75.     Illinois law prohibits reconsideration of a municipal council's legislative action, including its zoning determinations, where any objectors are not given a meaningful opportunity to test new evidence presented to the municipal council in support of reconsideration. *Ceresa*, 273 N.E.2d 407; *City of Kankakee*, 147 N.E. at 408; *see* 65 ILCS 5/11-13-25 (2014) (principles of due process apply to decision-making and review of zoning decisions); *Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 167, 781 N.E. 2d 223, 225 (Ill. Sup. Ct. 2002) (due process affords interested parties the right to cross-examine witnesses); *E & E Hauling, Inc. v. DuPage County*, 77 Ill. App. 3d 1017, 1021, 396 N.E.2d 1260, 1263 (Ill. App. Ct. 1979).

76.     Illinois law prohibits an unreasonable delay between a municipal council's legislative action and reconsideration of that action.  *Ceresa*, 273 N.E.2d 407.

77.     Defendants violated these limitations on reconsideration when they voted to reconsider their November 14, 2017 denial of Scientel's application at the November 28, 2017 hearing, and granted Scientel's application at the January 9, 2018 hearing, based on new evidence not before them at the November 14, 2017 hearing, and without providing objectors, including CyrusOne, a meaningful opportunity to cross-examine witnesses or otherwise test the new evidence submitted in support of reconsideration.

78.     Under Illinois law and the City's Code of Ordinances, a motion to reconsider the City Council's November 14, 2017 decision could only have been properly made at the November 14, 2017 meeting, and any motion made at a subsequent meeting could have no effect. *Ceresa*, 273 N.E.2d 407; City of Aurora Code of Ordinances Sec. 2-105(c). A true and correct copy of Section 2-105 of the City of Aurora Code of Ordinances is attached hereto as Exhibit D.

79.     Under the City's own Code of Ordinances, "[n]o motion to reconsider the acceptance/approval or rejection/denial of the recommendation of an advisory body required to hold public hearings shall be entertained except at the same meeting at which the original action was taken." City of Aurora Code of Ordinances, Sec. 2-105(c); *see* Exhibit D.

80.     Defendants violated Illinois law and the City's Code of Ordinances when it voted on and approved a motion to reconsider that was made at a meeting subsequent to the meeting at which it voted to reject the recommendation of the Planning Commission, which is an advisory body required to hold public meetings. *Ceresa*, 273 N.E.2d 407; City of Aurora Code of Ordinances, Sec. 34-27. A true and correct copy of Section 34-27 of the City of Aurora Code of Ordinances is attached hereto as Exhibit E.

81.     Under Illinois law and Roberts Rules of Order, a motion to reconsider is only in order as it pertains to the substance of a previous vote, enabling a legislative body an opportunity to change an earlier vote result, and does not serve as a basis to refine, illuminate, or otherwise clarify that earlier vote. Any effort to refine, illuminate, or otherwise clarify that earlier vote must occur after an additional public hearing to consider additional relevant information, particularly when the rights of another party have intervened. *Ceresa*, 273 N.E.2d at 411; *see City of Kankakee*, 147 N.E. at 408.

82.     The Defendant's purported reasons to reconsider its earlier vote to deny Scientel's application in order to prepare alternative findings of fact to support such denial were improper because the City Council minutes of its proceedings serve as the only necessary and legal record of its proceedings. *National Bank of Decatur v. Board of Education of Decatur*, 205 Ill. App. 57 (Ill. App. Ct. 1917) ("it must be kept in mind that appellee is a municipal corporation and that as a general proposition it speaks only through its records and properly executed documents"); *see also* Section 2.06 of Illinois Open Meetings Act, 5 ILCS 120/2.06 ("(a) All public bodies shall keep written minutes of all their meetings… (1) the date, time and place of the meeting; (2) the members of the public body recorded as either present or absent and whether the members were physically present or present by means of video or audio conference; and (3) a summary of discussion on all matters proposed, deliberated, or decided, and a record of any votes taken"); *T-Mobile S., LLC v. City of Roswell, Ga.*, 135 S. Ct. 808, 816 (2015).

83.     Defendants failed to provide the required substantive and procedural due process in the approval of Scientel's application when they refused to allow CyrusOne representatives to cross-examine witnesses at the public hearing before the Aurora Planning Commission.

Moreover, Defendants acted arbitrarily in approving Scientel's application in the absence of substantial evidence.

84.     Defendants failed to provide the required substantive and procedural due process in the approval of Scientel's application when they refused to allow CyrusOne representatives to cross-examine witnesses at the January 9, 2018 City Council meeting, and when they considered new evidence not previously placed on the record in their decision to reconsider the City Council's earlier vote to deny Scientel's application.

85.     CyrusOne respectfully requests the entry of a declaratory judgment that Defendants' grant of the Scientel application violated Illinois state law.

## COUNT V
## Injunctive Relief

86.     CyrusOne repeats and incorporates by reference all preceding paragraphs.

87.     CyrusOne has no adequate legal remedy for the conduct of Defendants.

88.     As a result of Defendants' actions, CyrusOne has been and will continue to be damaged and irreparably harmed absent the relief requested herein. The harm caused by Defendants' unlawful actions includes, but is not limited to impairment of (a) CyrusOne's ability to provide wireless network access to the Data Center and CME, (b) ability to host co-locating cellular telephone and data service; (c) ability to compete with other providers of telecommunications services; (d) full use of its existing licenses, permits, and business investments; and (d) good will and business reputation.

89.     The harm that CyrusOne has suffered and is suffering from Defendants' actions is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

90.     Moreover, the public interest in promoting and fostering telecommunications access and effective infrastructure has been irreparably harmed and will continue to be irreparably harmed by Defendants' unlawful actions. CyrusOne's present and future customers, as well as the public at large, are significantly prejudiced by Defendants' unlawful conduct.

91.     In contrast to the immediate and irreparable injury being suffered by CyrusOne, its customers, and the public interest, Defendants will suffer no significant injury if the Court issues the requested injunction and upholds the prior denial of the permit. CyrusOne's telecommunications facility has sufficient co-location capacity to service the needs of the City of Aurora, and the construction of the Scientel tower would impair, rather than enhance, the quality of wireless telecommunications in the City.

92.     CyrusOne has suffered irreparable injury as a result of Defendants' violations of the United States Constitution, the Act, and State and local law.

93.     CyrusOne has demonstrated a substantial likelihood of success on the merits, that the balance of hardships favors its position, and that the public interest would be served by issuance of an injunction.

94.     CyrusOne respectfully urges the Court to grant preliminary and permanent injunctive relief in support of its declaratory judgments.

**WHEREFORE**, Plaintiff CyrusOne respectfully requests that this Court issue an Order and Judgment:

a.      Declaring that the ordinance enacted by Defendants is in violation of the Supremacy Clause of the United States Constitution, is preempted by 27 U.S.C. § 253, and is without legal effect;

b.      Declaring that Defendants' granting of the Scientel application constitutes a violation of 47 U.S.C. § 332(c)(7)(B)(iii) in that it is not supported by substantial evidence contained in the written record;

c.      Declaring that Defendants' granting of the Scientel application was not conducted in accordance with and violated the requirements of City of Aurora telecommunications ordinances §§ 19-71, 19-77 and zoning ordinance § 10.6-5.

d.      Declaring that Defendants' granting of the Scientel application failed to provide substantive and procedural due process as required by Illinois state statute.

e.      Issue a temporary restraining order, followed by preliminary and permanent injunctions against all Defendants and those acting in concert ordering, directing, and enjoining Defendants from allowing the construction of Scientel's telecommunications tower.

f.      Awarding CyrusOne the costs, disbursements, and expenses of this action, including reasonable attorneys' fees; and

g.      Granting such other and further relief as this Court deems just and proper.

Dated: January 12, 2018

Respectfully submitted,


By: s/ Robert E. Browne, Jr.
     Attorneys for Plaintiff
     CyrusOne LLC


Robert E. Browne, Jr. (Atty No. 6255678)
Kevin G. Desharnais (Atty No. 6211688)
TROUTMAN SANDERS LLP
One N. Upper Wacker Dr., Ste. 2905
Chicago, IL 60606
312.759.1920


David S. Silverman
Stephen M. Soltanzadeh
ANCEL, GLINK, DIAMOND, BUSH, DICIANNI &
KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
(312) 782-7606
(312) 782-0943 Fax

## <u>VERIFICATION</u>

I, Robert Crespi, am a corporate officer of CyrusOne LLC the Plaintiff in this action. I have read the foregoing Verified Complaint and am familiar with its contents. I declare under penalty of perjury under the laws of the United States that all of the factual statements contained in the foregoing Verified Complaint are true and accurate to the best of my belief and are based upon personal knowledge, except where expressly indicated otherwise.

Dated: January 12, 2018

_____

Robert Crespi
Vice President, Enhanced Services
CyrusOne LLC